**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Criminal Action Nos. 13-262-01, 02, 05 (RMC)** |
| **PABLO LOVO, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**MEMORANDUM OPINION**

A jury convicted Pablo Lovo, Joel Sorto, and Yonas Eshetu in 2014 of conspiring

to interfere with interstate commerce by robbery, 18 U.S.C. § 1951, and Mr. Lovo and Mr. Sorto

of using, carrying or possessing a firearm during a crime of violence, 18 U.S.C. § 924(c).  The

Defendants were sentenced to prison terms of varying lengths followed by three years of

supervised release.  Following a 2018 Supreme Court decision in another case, the convictions of

Messrs. Lovo and Sorto on the gun count were overturned; each Defendant's conviction of

conspiracy under 18 U.S.C. § 1951 was sustained.  In 2018, all three Defendants were released

from the Bureau of Prisons to begin their terms of supervised release.  Each man has moved for

early termination of supervised release.

**I.  FACTS**

Mr. Lovo was sentenced to sixty-four months of incarceration for conspiring to

interfere with interstate commerce by robbery, 18 U.S.C. § 1951 (Count One), and sixty months

of incarceration for using, carrying or possessing a firearm during a crime of violence, 18 U.S.C.

§ 924(c) (Count Two), to run consecutively; Mr. Sorto was sentenced to forty months of

incarceration on Count One, and sixty months of incarceration on Count Two, to run

consecutively; and Mr. Eshetu was sentenced to sixty-four months of incarceration on Count

One.  Each Defendant was sentenced to thirty-six months of supervised release following

incarceration.

Defendants appealed their convictions on various grounds and, in an opinion

dated July 25, 2017, the D.C. Circuit affirmed the district court on all but one claim.  *United*

*States v. Eshetu*, 863 F.3d 946 (D.C. Cir. 2017) (*Eshetu I*), *vacated in part on reh'g*, 898 F.3d 36

(D.C. Cir. 2018).  The Circuit remanded to the district court to consider whether Defendants

suffered ineffective assistance of counsel when trial counsel did not object to the admission of

certain recordings or raise an entrapment defense.  This Court received a mandate as to Mr.

Eshetu on August 3, 2018; following a status hearing, the parties agreed to suspend further

proceedings on the ineffective assistance claim until the Court received mandates for Messrs.

Lovo and Sorto.

Following the 2017 Circuit opinion, the Supreme Court held that 18 U.S.C.

§ 16(b)—the "residual clause" of section 16's crime-of-violence definition—is

unconstitutionally vague.  *Sessions v. Dimaya*, 138 S. Ct. 1204, 1210 (2018).  Messrs. Lovo and

Sorto sought further review of their convictions on Count Two in light of *Dimaya* and on August

3, 2018, the Circuit vacated their convictions on Count Two.  *United States v. Eshetu*, 898 F.3d

36 (D.C. Cir. 2018) (*Eshetu II*).  Counsel for Messrs. Lovo and Sorto then moved for their

clients' immediate release because each had already served his full prison term on Count One.

The Court granted these motions:  Mr. Sorto was released from the Bureau of Prisons on October

5, 2018, and Mr. Lovo was released on November 19, 2018.[1]  Mr. Eshetu was released several

months earlier on May 17, 2018.

---

[1] When released from the Bureau of Prisons, Mr. Lovo was detained by U.S. Immigration and
Customs Enforcement (ICE) until April 2019.

Mr. Eshetu's term of supervised release will expire on May 16, 2021; Mr. Sorto's on October 4, 2021; and Mr. Lovo's on November 18, 2021. Each Defendant has moved for early termination of supervised release and Mr. Lovo has moved, in the alternative, to modify his conditions of release. The Government opposes Defendants' motions. The matter is ripe for review.[2]

## II. LEGAL STANDARD

Pursuant to 18 U.S.C. § 3583(e), a court may "terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). A district court may also "modify, reduce, or enlarge the conditions of supervised release[ ] at any time prior to the expiration or termination of the term of supervised release." *Id.* § 3583(e)(2).

When considering a request for early termination of supervised release, the Court must first consider: (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) deterrence of criminal conduct; (3) protection of the public from further crimes of the defendant; (4) the need to provide the defendant with education or vocational training, medical care, or other correctional treatment; (5) the applicable sentencing guideline range for the offense and pertinent policy statements issued by the U.S. Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution

---

[2] *See* Joel Sorto Mot. for Termination of Supervised Release (Sorto Mot.) [Dkt. 303]; Yonas Eshetu Mot. for Termination of Supervised Release (Eshetu Mot.) [Dkt. 304]; Pablo Lovo Mot. for Termination of Supervised Release and in the Alternative to Modify Conditions (Lovo Mot.) [Dkt. 306]; Gov't's Omnibus Opp'n to the Defs.' Mots. for Termination of Supervised Release (Opp'n) [Dkt. 308]; *see also* Gov't's Suppl. Omnibus Opp'n to the Defs.' Mots. for Termination of Supervised Release (Suppl. Opp'n) [Dkt. 309]; Gov't's Second Suppl. Opp'n to the Defs.' Mots. for Termination of Supervised Release (Second Suppl. Opp'n) [Dkt. 311].

to any victims of the offense.  *See* 18 U.S.C. § 3553(a); *see also United States v. Harris*, 258 F. Supp. 3d 137, 144 (D.D.C. 2017).

The Circuit Court for the District of Columbia Circuit has instructed that the district court must explain its consideration of the requisite factors when denying a motion for early termination, unless "the reasons for denying the motion are apparent from the record." *United States v. Mathis–Gardner*, 783 F.3d 1286, 1289 (D.C. Cir. 2015).

### III. ANALYSIS

Only the first four factors of Section 3553(a) are of particular relevance to the Defendants.  The fifth factor—the U.S. Sentencing Commission's Guidelines and policy statements—is of limited relevance because "the Commission has not promulgated any guidelines or policy statements addressing early termination of supervised release, but limited its policy guidance to violations of supervised release." *Harris*, 258 F. Supp. 3d at 145.  The sixth factor, which considers avoiding unwarranted sentencing disparities, has "limited utility" because this factor "would generally undermine the case specific inquiry required in evaluating a motion for early termination of supervised release." *Id.*  The seventh factor, which considers restitution obligations, does not apply because there were no victims in this case.

The remaining pertinent factors must be analyzed for each Defendant:  (1) the nature and circumstances of the offense; (2) deterrence of criminal conduct; (3) protection of the public; and (4) the need to provide the defendant with training or correctional treatment.  It is also pertinent to review whether each man's conduct following release and whether the "interest of justice" warrants an early termination of supervised release.  18 U.S.C. § 3583(e)(1).

### A. Mr. Lovo

#### 1. *Request for Early Termination of Supervision*

<u>*Nature and Circumstances of the Offense.*</u>  In 2013, Messrs. Lovo, Sorto, and Eshetu joined a conspiracy with two other co-defendants to rob a narcotics dealer who was, unbeknownst to them, totally fictitious.  The plan came to fruition over the course of five meetings with an undercover police officer and culminated in a September 5, 2013 meeting at a Washington, D.C. storage facility, where the police arrested all conspirators.  Mr. Lovo attended all five meetings and served as a leader and organizer of the conspiracy.  *See Eshetu I*, 863 F.3d at 949-50.

As the Government observes, Mr. Lovo's acts were "very detailed in [their] planning" and the coconspirators "were prepared to engage in what could have been very violent criminal acts."  Opp'n at 9.  During an August 24, 2013 meeting, Mr. Lovo volunteered to supply guns for the robbery, including a "TEC-9" semiautomatic pistol.  *Eshetu I*, 863 F.3d at 949.

Mr. Lovo was initially found guilty on Counts One and Two; however, the latter charge has been vacated.  *See Eshetu II*, 898 F.3d 36.  Mr. Lovo has no other felony convictions: his criminal history includes six misdemeanor convictions, four of which were traffic offenses.  Nevertheless, the Court finds that the first factor weighs against granting early termination due to the seriousness of Mr. Lovo's criminal conduct in this case.

<u>*Deterrence, Protecting the Public, and Training or Correctional Treatment*</u>.  Mr. Lovo has not been rearrested while on supervision.  However, the Probation Office has advised that its risk assessment tool suggests that Mr. Lovo poses a high risk of engaging in new criminal activity while in the community.

Mr. Lovo's initial drug screen tested positive for cocaine.  This Court then modified Mr. Lovo's conditions of release to require substance abuse treatment.  The

Government reports that as of November 20, 2019, Mr. Lovo had "completed three of the six required substance abuse group sessions," and that random drug testing will cease after completion of six sessions. Suppl. Opp'n at 3. The Government further notes that "Mr. Lovo is required to call the [substance abuse treatment] program on a daily basis in the evenings and based upon the system used by the program, he will be notified whether he has to report for random drug testing the following day." *Id.*

Due to Probation's determination that Mr. Lovo poses a high risk of engaging in new criminal activity and Mr. Lovo's ongoing treatment, the Court concludes that the factors of deterring further crime, protecting the public, and providing correctional treatment through substance abuse treatment favor continuing Mr. Lovo's supervision and denying his request for early termination of supervision.

### *Consideration of Interest of Justice Under 18 U.S.C. § 3583(e)(1)*

"In addition to consideration of the factors under § 3553(a), the Court must be 'satisfied' that early termination of supervised release 'is warranted by the conduct of the defendant released and the interest of justice.'" *United States v. King*, No. 03-cr-249 (BAH), 2019 WL 415818, at *4 (D.D.C. Feb. 1, 2019) (citing 18 U.S.C. § 3583(e)(1)). In this case, Mr. Lovo contends that his conditions of release are onerous and unnecessary given his employment, absence of new violations, and compliance with the terms of supervision. Lovo Mot. at 2. Mr. Lovo notes that since April 2019, he has resided at his mother's home in Maryland and has been employed as a mechanic and also performing home renovation jobs. The Probation Officer conducts home visits either monthly or every other month.[3]

---

[3] Mr. Lovo is supervised by the Probation Office in Maryland. The Government notes that the Probation Office in Maryland does not require in-person or telephonic reporting; instead, the Probation Office conducts home visits. Suppl. Opp'n at 2-3.

The Government responds that Mr. Lovo has not been in full compliance due to his positive drug test. Moreover, the Government argues that "a defendant's good behavior, standing alone, is insufficient to warrant early termination of supervised release"; rather, a defendant "'must show something of an unusual or extraordinary nature in addition to full compliance.'" Opp'n at 14 (quoting *United States v. Johnson*, 228 F. Supp. 3d 57, 63 (D.D.C. 2017)).

It is commendable that Mr. Lovo has maintained stable employment although he has not otherwise shown exceptional behavior. *Cf. Harris*, 258 F. Supp. 3d at 149-150 (stating that "construing 18 U.S.C. § 3583(e)(1) to require the defendant to exhibit objectively extraordinary or unusual conduct during supervision is a stretch not expressed in the statutory text"). More importantly, Mr. Lovo has only been in the community since April 2019 when he was released by ICE. Given this relatively short period of time, his overall compliance with his conditions of supervised release does not persuade the Court that terminating his supervised release at this juncture is in the "interest of justice." 18 U.S.C. § 3583(e)(1).

Mr. Lovo also "requests that the Court terminate the term of supervised release to take into account that he actually served time in prison in excess imposed by the Court." Lovo Mot. at 3. Mr. Lovo references the fact that by the time he was released after Count Two was vacated by the Circuit, he had already served his full prison sentence on Count One. However, the Court is cognizant that "[s]upervised release fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000); *see also Harris*, 258 F. Supp. 3d at 144-45 (discussing legislative history). In considering a request for early termination of supervised release, the Court's inquiry does not focus on Mr. Lovo's term of incarceration but, rather, whether continued supervision is needed "to improve the odds of a

successful transition from the prison to liberty." *Johnson v. United States*, 529 U.S. 694, 708-09 (2000). Such is the case here.

The Court will deny without prejudice Mr. Lovo's request for early termination of supervised release.

### 2. Request for Modification of Release Conditions

Mr. Lovo moves, in the alternative, to modify the terms of his release to require no more than monthly phone calls to the Probation Office. Opp'n at 3. Mr. Lovo notes that "[h]is current conditions of supervised release require that he call the Probation Department on a daily basis" and that "[t]hese conditions are onerous and unnecessary." *Id.*

The Government opposes Mr. Lovo's modification request and explains that

> Defendant Lovo does not report daily by telephone to the Probation Office. [Rather,] Defendant Lovo calls the substance abuse treatment program daily to learn whether he needs to report for random drug testing the following day. Once the defendant successfully completes the remaining three substance abuse group sessions, the random drug testing and daily calls will cease.

Suppl. Opp'n at 5.

Accordingly, the Court will deny Mr. Lovo's request to modify his conditions so that Mr. Lovo can successfully complete his substance abuse treatment program.

## B. Mr. Sorto

*Nature and Circumstances of the Offense*. Mr. Sorto participated in two meetings in preparation for the planned robbery. During a meeting on August 24, 2013, Mr. Sorto and Mr. Lovo discussed the robbery's target and logistics and Mr. Sorto "interjected that he would be armed with a machete." *Eshetu I*, 863 F.3d at 949. Mr. Sorto also attended the final meeting on September 5, 2013, which took place just before the robbery was planned to occur.

Mr. Sorto was initially found guilty on Counts One and Two. As with Mr. Lovo, the latter charge has been vacated. *See Eshetu II*, 898 F.3d 36. Mr. Sorto's prior criminal history includes two previous felony convictions: one for carrying a pistol without a license and another for attempted robbery. For both of these convictions, Mr. Sorto had his probation revoked. In this case, Mr. Sorto began supervision on October 5, 2018.

The seriousness of Mr. Sorto's conduct in this case, his attempted/planned use of a machete for the acknowledged purpose of frightening people, his prior criminal history, and his limited period of supervision weigh against granting early termination of supervision at this time.

*Deterrence, Protecting the Public, and Training or Correctional Treatment*. Mr. Sorto has not been rearrested while on supervision and generally appears to be in compliance with his conditions of supervision. The Probation Officer reports that Mr. Sorto is currently unemployed and that it has referred him to several vocational programs. The Government states that Mr. Sorto was terminated from his most recent job on October 30, 2019, following a verbal altercation with his supervisor. All of Mr. Sorto's drug tests have been negative. The Government notes that Mr. Sorto has completed cognitive behavioral therapy on supervision.

Mr. Sorto's job loss is of concern and suggests that job training and/or referrals from the Probation Office remain important to help Mr. Sorto succeed in his return to the community. He has also served just over a year of supervision. These considerations weigh against early release at this time.

*Consideration of Interest of Justice Under 18 U.S.C. § 3583(e)(1)*

Mr. Sorto asserts that early termination of supervision is appropriate because "he works full time after having difficulty finding a job" and "he is subject to unannounced visits at his work site[ ] which disrupts his work-related responsibilities and puts his hard-won job in

9

jeopardy." Sorto Mot. at 2. However, the Probation Officer reports that Mr. Sorto is currently unemployed and the Government attributes his discharge to an argument with his supervisor. The Probation Officer further reports that Mr. Sorto's housing is not yet stable.

Because of the seriousness of his offense, including the planned use of a machete; the relatively short time that Mr. Sorto has been on supervision; and the fact that he has neither employment nor stable housing, the Court does not consider early termination of supervised release to be in the interest of justice. 18 U.S.C. § 3583(e)(1). The Court will deny without prejudice Mr. Sorto's request for early termination.

### C. Mr. Eshetu

*Nature and Circumstances of the Offense.* Mr. Eshetu participated in the final meeting in preparation for the planned robbery on September 5, 2013. During this meeting "[he] assumed something of a leadership role, assigning his confederates specific tasks for the robbery." *Eshetu I*, 863 F.3d at 950. Mr. Eshetu was convicted on Count One, which is his sole felony conviction. Mr. Eshetu's prior criminal history includes three misdemeanor convictions. For one of these misdemeanor convictions, his probation was revoked for repeated violations.

The seriousness of Mr. Eshetu's conduct in this case weighs against granting early termination.

*Deterrence, Protecting the Public, and Training or Correctional Treatment.* Mr. Eshetu has been on supervised release for 19 months and has not been rearrested. He has generally maintained compliance with his supervision conditions.[4] Mr. Eshetu completed a substance abuse assessment and the Government has not argued that any additional treatment is

---

[4] The Probation Officer reports that Mr. Eshetu had one positive drug test for marijuana on July 24, 2019, and that all prior and subsequent tests have been negative.

necessary. He has consistently held a fulltime job during supervision, which might explain his failure to participate in an educational or vocational skills training program, which is one of Mr. Eshetu's conditions of release.

The factors of deterrence and job assistance do not favor the continuation of supervision although protection of the public weighs somewhat in favor of continuing it.

*Consideration of Interest of Justice Under 18 U.S.C. § 3583(e)(1)*

Mr. Eshetu contends that early termination of supervised release is appropriate because "he works full time" and "is subject to unannounced visits at his work site, which disrupts his work-related activities"; he "is still required to report in person to his [United States Probation Office] supervising officer . . . on little or no notice"; and he "is in full compliance with the requirements of supervised release." Eshetu Mot. at 2. The Probation Officer reports that she currently sees Mr. Eshetu approximately every other month through unannounced home or job visits. The Probation Officer reports that Mr. Eshetu has never indicated to her that visits to his work site have caused any difficulty. Moreover, the Probation Officer explains that Mr. Eshetu is only required to report in person to the Probation Officer if a specific matter needs to be addressed, such as a drug screen, and that he is provided at least twenty-four hours' notice.

It is obviously noteworthy and to his credit that Mr. Eshetu has maintained steady employment and abided by his conditions of supervision as needed. In March of 2019, the Court vacated the requirement that Mr. Eshetu report in-person to Probation on a weekly basis. Mr. Eshetu now has reduced, bimonthly contracts with Probation. This change in the degree of supervision has had no reported negative results.

The Court will applaud Mr. Eshetu by granting his motion for early termination of supervised release.

## IV. CONCLUSION

For the reasons stated, the Motions for Early Termination of Supervised Release filed by Messrs. Lovo and Sorto, Dkts. 303 and 306, will be denied and the similar Motion filed by Mr. Eshetu, Dkt. 304, will be granted. A separate Order accompanies this Memorandum Opinion.

Date: January 2, 2020

ROSEMARY M. COLLYER
United States District Judge